UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**CATHERINE JOHNS**,   Case No. 5:12 CV 274

    Plaintiff,   Magistrate Judge James R. Knepp II

  v.   MEMORANDUM OPINION AND ORDER

**COMMISSIONER OF SOCIAL SECURITY**,

    Defendant.

## INTRODUCTION

Plaintiff Catherine Johns seeks judicial review of Defendant Commissioner of Social Security's decision to deny Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The district court has jurisdiction under 42 U.S.C. § 405(g) and § 1383(c)(3). The parties consented to the undersigned's exercise of jurisdiction in accordance with 28 U.S.C. § 636(c) and Civil Rule 73. (Doc. 15). For the reasons given below, the Court affirms the Commissioner's decision denying benefits.

## BACKGROUND

Procedural History

Plaintiff applied for DIB and SSI on October 3, 2007, alleging disability since October 2, 2003, alleging she could not work due to depression and mental disorders. (Tr. 106-12, 124). Plaintiff's claims were denied initially and upon reconsideration. (Tr. 78-81). Plaintiff then requested a hearing before an administrative law judge (ALJ) to review this decision, which was held December 3, 2009. (Tr. 19, 96-98). The ALJ issued a decision on January 26, 2010, denying

Plaintiff's claim. (Tr. 16-29). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-6).

Vocational Background

Plaintiff obtained her GED and began work in 1978. (Tr. 110, 162). She worked for two years before stopping to stay home with her children. (Tr. 110). Aside from a brief stint working outside the home in 1986, Plaintiff remained home with her children until she began working as a waitress/bartender in 1990, and she continued working in that occupation until her alleged disability onset date of October 3, 2003. (Tr. 110).

Medical History

The record contained no medical evidence at all for the dates between Plaintiff's alleged onset date of March 3, 2003 and June 7, 2007, when she visited the emergency room (ER) regarding an abscessed tooth. (Tr. 240). The first relevant medical evidence related to her alleged inability to work stemmed from a September 11, 2007 car accident, after which Plaintiff went to the ER with cervical spine and neck pain. (Tr. 241-42).

An x-ray of her neck and spine found mild degenerative disc disease at C5-6 but was otherwise unremarkable. (Tr. 241). Physical examination revealed some paracervical neck discomfort as well as minimal discomfort in the paralumbar region. (Tr. 242). Plaintiff was limited in side-to-side rotation of her neck but otherwise had a fairly normal range of motion. (Tr. 242) Plaintiff was diagnosed with a cervical and lumbar sprain, given instructions to ice and rest the injury, told to take ibuprofen, and provided with prescriptions for Vicodin and Flexeril. (Tr. 242-43).

On October 16, 2007, Plaintiff returned to the ER complaining of pain off and on, stemming from her neck and travelling down her back. (Tr. 244). Physical examination showed

some tenderness, with some active spasms in her neck. (Tr. 246). Plaintiff was also diffusely tender in the lower lumbar area. (Tr. 246). She had a full range of motion and normal strength, with no gross motor deficits. (Tr. 246). Plaintiff was again diagnosed with a cervical strain and back pain. (Tr. 244). She was prescribed three pain medications – morphine, Toradol, and Norflex – and referred to orthopedics for a follow-up, though no record indicated she ever followed up with orthopedics. (Tr. 246).

On December 7, 2007, Plaintiff saw Katherine O'Reilly, CNP at Coleman Behavioral Health for a self-referred initial psychiatric visit. (Tr. 162). Plaintiff maintained good eye contact but was tearful and slightly monotone throughout the interview. (Tr. 163). CNP O'Reilly found Plaintiff's depression was high and believed this was likely somewhat due to her financial situation and the fact that she was homeless. (Tr. 163). CNP O'Reilly diagnosed major depression, recurrent, moderate; alcohol abuse, full sustained remission; and polysubstance dependence, full sustained remission. (Tr. 163). Plaintiff started taking Cymbalta and Vistaril. (Tr. 163).

Plaintiff had her first psychiatric revisit on January 4, 2008, at which she reported problems obtaining her medication and said her case management was not providing adequate assistance. (Tr. 193). Plaintiff returned to Coleman Behavioral Health on February 1, 2008 and reported feeling slightly better. (Tr. 191). She complained of feeling uncomfortable around other people, as though they were judging her. (Tr. 191). Plaintiff was well-groomed, had a full affect, and was found to be futuristic and goal-oriented, with adequate insight and judgment. (Tr. 191).

On June 24, 2008, Plaintiff was admitted to the ER after she attempted suicide by overdosing on her anti-depressants while also consuming alcohol. (Tr. 253). Plaintiff was stabilized in the Intensive Care Unit overnight and transferred to the psychiatric floor the

following day. (Tr. 254-55). Sharad Bhatt, MD, diagnosed Plaintiff with major depression, recurrent, severe, without psychiatric features; alcohol dependence; personality disorders, not otherwise specified; and assigned a GAF of 40. (Tr. 256).

On March 16, 2009, Plaintiff became intoxicated, fell down a flight of steps, and broke both sides of her nose. (Tr. 262, 268). A CT scan of her head, neck, and facial bones revealed possible straightening of the normal cervical spine lordosis, but above-average patient movement during the exam may have compromised the results. (Tr. 270). The scan revealed no soft tissue abnormality and no compression deformity of the cervical spine vertebral bodies, and intervertebral disc spaces were maintained. (Tr. 270).

Opinion Evidence

On December 14, 2007, Steve Sparks, Ph.D. evaluated Plaintiff at the request of the Bureau of Disability Determination. Plaintiff reported traumatic childhood events, reported using alcohol "as much as possible", and said her last illicit drug use was six months prior to the appointment, when she used marijuana and crack. (Tr. 165-66). Plaintiff also reported crying spells, a constant depressed mood, lack of motivation, feelings of worthlessness, decreased libido, feeling irritable and unsociable, and disturbed sleep. (Tr. 167).

Plaintiff told Dr. Sparks she was "in good physical health, ha[d] no major health issues[,] and [wa]s not prescribed medication for her physical health." (Tr. 167). She described her typical day as "nothing." Even though Plaintiff said she did not cook, she reported she was able to do so. (Tr. 168). Plaintiff also stated she was able to manage money, do her own laundry, bathe daily, and take her medications without assistance. (Tr. 168). Additionally, Plaintiff stated her depressive symptoms had been occurring for one year and were precipitated by deaths in her family. (Tr. 167).

4

On examination, Plaintiff was dressed casually and appropriately, with fair hygiene, and she ambulated without difficulty. (Tr. 169). She did not demonstrate overt pain behavior, and she was cooperative and engaged easily with Dr. Sparks. (Tr. 169). Plaintiff answered questions directly and succinctly, had thought content relevant to the topics discussed, exhibited a subdued and pleasant mood that was at times tearful and depressed, and did not demonstrate behavior consistent with anxiety. (Tr. 169). Dr. Sparks believed Plaintiff's cognitive functioning was within normal limits, she had fair insight with normal judgment, she had adequate common sense, and she appeared capable of living independently with adequate decision-making abilities. (Tr. 169).

Dr. Sparks diagnosed Plaintiff with depressive disorder, not otherwise specified; cocaine dependence (in early fully remission); and alcohol dependence. (Tr. 170). Plaintiff was found to have a GAF of 50. (Tr. 170). Dr. Sparks opined Plaintiff was moderately impaired in her ability to relate to others, noting that although Plaintiff was tearful, she was able to relate to him during the interview. (Tr. 171). Dr. Sparks opined Plaintiff's ability to understand, remember, and follow instructions was not impaired. (Tr. 171). He also found Plaintiff had the ability to do simple, repetitive tasks, and noted her exam did not suggest any gross deficits in attention. (Tr. 171). Dr. Sparks stated Plaintiff's ability to withstand the stress and pressures of day-to-day work was markedly impaired, due to the significant depression and anxiety she was experiencing at the time. (Tr. 171).

On December 24, 2007, Taseem Khan, Ed.D reviewed Dr. Sparks's findings and opined Plaintiff's ability to handle daily stress was not markedly limited. (Tr. 189). Dr. Khan noted Plaintiff could complete household chores and was capable of living independently. (Tr. 189). Dr. Khan further noted Plaintiff was able to handle the stress of the consultative exam and that

her cognitive functioning was grossly intact. (Tr. 189). For these reasons, Dr. Khan gave limited weight to Dr. Spark's opinion that Plaintiff was markedly impaired in handling stress. (Tr. 189).

Hearing Testimony

At the hearing, Plaintiff testified she worked as a bartender or waitress until the time of her mother's death in 2003. (Tr. 55). Plaintiff testified she stopped working at that time because she "couldn't face people anymore [and] . . . didn't want to be around anybody." (Tr. 56). Plaintiff testified this situation persisted at the time of her hearing. (Tr. 56).

Plaintiff testified she could prepare her own meals but only ate every couple days due to lack of appetite. (Tr. 58). She said she could bathe, but only did so every three days. (Tr. 58). Plaintiff further stated she did not have problems walking or standing and could lift at least a gallon of milk, but never had occasion to lift more than that, and she also said she could clean up messes in her house after her children visited her. (Tr. 58, 60). When asked what physical problems she was experiencing, Plaintiff only mentioned that she needed to get her liver checked. (Tr. 61).

Plaintiff testified about her June 2008 suicide attempt, explaining it was due to a build-up of losses in her life, including the deaths of her boyfriend of 21 years, her mother, and her grandson, who died in her arms. (Tr. 63-64). She testified she was no longer suicidal; she just did not want to be around people. (Tr. 64). Plaintiff testified she was currently taking lithium, but said it was not helping her and she had to get her liver checked before they could try a different drug. (Tr. 68).

The VE testified a hypothetical individual with the limitations the ALJ ultimately incorporated into Plaintiff's RFC would not be able to return to Plaintiff's past work as a barmaid but would be able to find other work. (Tr. 74-75). Specifically, the VE testified an

individual with no exertional limitations who was limited to low-stress work, could only have limited superficial interaction with co-workers and supervisors, and could have either superficial or no interaction with the public would be able to find work as a laundry worker, surveillance system monitor, or housekeeper. (Tr. 74-76). The VE further testified that with the additional limitation of being off-task twenty percent of the time due to depression and difficulty concentrating, the hypothetical individual would not be able to work. (Tr. 77).

ALJ's Decision

On January 26, 2010, the ALJ issued a decision finding Plaintiff not disabled. (Tr. 16-29). The ALJ found Plaintiff had the following severe impairments: major depressive disorder, recurrent, moderate; alcohol dependence; and cocaine dependence. (Tr. 21). The ALJ found the evidence also established degenerative disc disease of the cervical spine. (Tr. 21). However, the ALJ concluded this was not a severe impairment because Plaintiff's cervical spine x-rays showed only mild degenerative disc disease and Plaintiff's physical exams had been essentially normal. (Tr. 21).

In assessing Plaintiff's RFC, the ALJ concluded Plaintiff had no exertional limits. (Tr. 24). Based on the evidence from Coleman Professional Services as well Dr. Sparks's consultative psychological evaluation, the ALJ determined Plaintiff's mental impairments limited her to repetitive tasks which could be learned in 30 days or less; work which was low stress (meaning no high production quotas, no piece work, no assembly line work, no strict time requirements, no work which involved arbitration, negotiation or confrontation, no work which required directing the work of others, and no work which required being responsible for the safety of others); and further found Plaintiff must have only limited and superficial interaction with supervisors, co-workers, and the public. (Tr. 23-24).

7

Based on the RFC determination and VE testimony, the ALJ found Plaintiff would be able to transition to other work available in large numbers in the national economy and therefore found her not disabled. (Tr. 25-26).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525,528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C.§ 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## STANDARD FOR DISABILITY

Eligibility for SSI and DIB is predicated on the existence of a disability. 42 U.S.C. § 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c (a)(3)(A). The

8

Commissioner follows a five-step evaluation process – found at 20 C.F.R. §§ 404.1520 and 416.920 – to determine if claimant is disabled:

1. Was the claimant engaged in a substantial gainful activity?

2. Did the claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps one through Four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The court considers the claimant's residual functional capacity, age, education, and pat work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis. Including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. §§ 404.1520 (b)-(f) & 416.920 (b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Plaintiff asserts the ALJ erred by assessing an RFC she alleges did not adequately accommodate her actual degree of restriction. (Doc. 14, at 8). Plaintiff contends the ALJ made two errors in evaluating Plaintiff's RFC. First, she asserts the ALJ erred by omitting physical limitations from Plaintiff's RFC. (Doc. 14, at 8). Second, she argues the ALJ erred in rejecting

9

the portion of Dr. Sparks's mental examination determination stating Plaintiff was markedly impaired in her ability to withstand the stress and pressure of day to day work. (Doc. 14, at 13).

Plaintiff's Record Contained No Relevant Evidence for the DIB-Eligible Period

As a preliminary matter, the Court addresses Plaintiff's claim for DIB. To qualify for DIB, Plaintiff must have been under disability on or before the date her insured status expired on June 30, 2007. (Tr. 21); 42 U.S.C. § 423(a); 20 C.F.R. §§ 404.131(a), 404.320(b)(2); *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990). Plaintiff's medical record only contained one record of treatment on or before this date, which was when she was treated in the ER for an abscessed tooth on June 7, 2007. (Tr. 240). Plaintiff did not start treatment for her mental health conditions until December 7, 2007, nearly six months after her insured status expired. (Tr. 162). Plaintiff's alleged physical conditions did not even appear to have been present until she was involved in the car accident that sent her to ER on September 11, 2007, nearly three months after her insured status expired. (Tr. 242). Because the record contained no medical evidence demonstrating any mental or physical work-related functional limitations during the relevant DIB period, Plaintiff failed to demonstrate the Commissioner erred in determining she was not entitled to DIB.

Substantial Evidence Supports the ALJ's RFC Assessment

A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1). An ALJ must consider all symptoms and the extent to which those symptoms are consistent with the objective medical evidence. *Id.* § 416.929. An ALJ must also consider and weigh medical opinions. *Id.* § 416.927. When a claimant's statements about symptoms are not substantiated by objective medical evidence, the ALJ must

make a finding regarding the credibility of the statements based on a consideration of the entire record. Social Security Ruling (SSR) 96-7p, 1996 WL 374186, *1.

*The ALJ's Assessment of Plaintiff's Physical Limitations*

The ALJ concluded Plaintiff did not have any exertional limitations because she did not suffer from a severe physical impairment. (Tr. 24). The ALJ determined that although Plaintiff reported suffering from pain, her allegations were not credible. (Tr. 24). She based this determination on Plaintiff's x-rays, which revealed only mild degenerative disc disease, and on the fact that no physical limitations were revealed in Plaintiff's subsequent physical examinations. (Tr. 24).

Plaintiff argues the ALJ erred by wholly disregarding her alleged physical limitations in determining her RFC. (Doc. 14, at 9). There is no basis for this assertion. Although Plaintiff asserted she experienced spinal pain, she provided no evidence of any kind of physical limitation resulting from this condition. Plaintiff's x-rays immediately following her car accident in September 2007 did reveal some mild degenerative disc disease. (Tr. 242). However, she did not provide any evidence suggesting how this condition might limit her ability to work. Plaintiff's own testimony indicated the only physical problem she had was the need to get her liver checked. (Tr. 61). Physical examination of Plaintiff immediately following the car accident revealed only some limitation in the side-to-side rotation of her neck. (Tr. 242). Plaintiff otherwise enjoyed a full range of motion. (Tr. 242). Her subsequent ER visit in October revealed no physical limitations, and Plaintiff was found to have a full range of motion, full strength, and no gross motor defects. (Tr. 244).

Plaintiff contends the ALJ's RFC determination cannot possibly portray her actual degree of restriction because she argues it is "certainly absurd for an individual with degenerative disc

11

disease of the cervical spine and lower back with muscle spasms" to be able to perform heavy work – which involves repeatedly lifting up to 50 pounds and occasionally lifting more than 100 pounds – or very heavy work, which involves repeatedly lifting up to 100 pounds. (Doc. 14, at 13) (citing 20 C.F.R. §§404.1567(d)-(e); 416.967(d)-(e)). However, Plaintiff provided no evidence for this assertion, and her medical records and reports do not demonstrate Plaintiff had exertional limitations. (*See, e.g.,* Tr. 244).

The ALJ did not err in failing to include physical limitations in Plaintiff's RFC because the evidence did not establish any physical restrictions. Because no evidence demonstrated physical restrictions due to chronic pain, substantial evidence supports the ALJ's decisions to find Plaintiff's self-reported pain not credible and to omit physical restrictions from her RFC.

*The ALJ's Assessment of Plaintiff's Mental Limitations*

The ALJ determined Plaintiff suffered from major depression, recurrent, moderate; and alcohol and cocaine dependence. (Tr. 24). The ALJ concluded, based on Dr. Sparks's consultative psychological evaluation and the record from Coleman Behavioral Health, that these mental impairments limited Plaintiff to simple, routine, repetitive tasks which could be learned in 30 days or less; work which would be low stress (meaning no high production quotas, no piece or assembly line work, no strict time requirements, no work which involved arbitration, negotiation, or confrontation, no work which required directing the work of others, and no work which required being responsible for the safety of others); and found Plaintiff could have only limited superficial interaction with co-workers and the general public. (Tr. 24).

Plaintiff argues the ALJ erred in rejecting Dr. Sparks's opinion stating Plaintiff was markedly limited in her ability to withstand the stress and pressure of normal work. (Doc. 14, at 14). Specifically, Plaintiff argues the ALJ erred in finding Dr. Sparks's opinion about Plaintiff's

stress levels inconsistent with Dr. Sparks's finding that Plaintiff's memory, cognitive functioning, and ability to pay attention to detail were within normal limits. (Doc. 14, at 14). In short, Plaintiff argues a person with good memory, cognitive abilities, and attention skills may still be unable to withstand stress. (Doc. 14, at 14).

In considering the record as a whole, it is clear the ALJ did not discount Dr. Sparks's opinion based solely on these findings. The ALJ also considered the consultative opinion of Taseem Khan, Ed.D, who reviewed Dr. Sparks's opinion and decided to give limited weight to his assessment that Plaintiff was markedly limited in her ability to handle stress. (Tr. 23, 189). Dr. Khan based this opinion on Plaintiff's ability to handle daily activities and complete the assessment, as well as the fact that Plaintiff's cognitive functioning was grossly intact. (Tr. 189). Additionally, the ALJ considered treatment notes from Coleman Behavioral Health, which did not indicate Plaintiff was markedly limited in her ability to handle workplace stress. (Tr. 23). Further, the ALJ considered that Plaintiff has had few episodes of decompensation and none of these episodes have been of extended duration. (Tr. 23).

Based on the foregoing, substantial evidence supports the ALJ's decision to give limited weight to Dr. Sparks's opinion regarding marked impairments in Plaintiff's ability to handle workplace stress.

## CONCLUSION

Following review of the arguments presented, the record, and applicable law, the Court finds the ALJ's decision supported by substantial evidence. Therefore, the Court affirms the Commissioner's decision denying benefits.

IT IS SO ORDERED

                                                s/James R. Knepp, II
                                                United States Magistrate Judge